IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNECTIVE TISSUE IMAGINEERING, LLC, a California limited liability company<br><br>Plaintiff,<br><br>v.<br><br>THOMAS F. MITTS, M.D., an individual, HUMAN MATRIX SCIENCES, LLC, a California limited liability company, CLARITY SKINCARE, INC., a California corporation, and THOMAS F. MITTS, M.D., INC., a California corporation,<br><br>Defendants.<br>_____/ | No. C 07-00058 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE TO AMEND JOINT CLAIM CONSTRUCTION STATEMENT AND VACATING HEARING** |

**INTRODUCTION**

In this patent-infringement action, defendants move for leave to amend the joint claim construction statement. Defendants have shown that their proposed amendment would not be futile and that their proposed amendment should at least be considered during claim construction. Furthermore, defendants have demonstrated that they were diligent in pursuing this amendment, and plaintiff has not shown that it would be substantially prejudiced by the amendment. Accordingly, defendants' motion for leave to file an amended joint claim construction statement is **GRANTED**. Seeing that no further argument is necessary, the hearing on this motion is hereby **VACATED**.

**STATEMENT**

Plaintiff Connective Tissue Imagineering, Inc., was formed by defendant Thomas F. Mitts and two business partners in 1998. The partners assigned several patent applications to CTI, including the three patents in suit (Hamm Decl. Exhs. A–C). The patents claim peptides found in elastin — a protein that allows mammalian tissue, including skin, to retain its shape after being stretched or pulled. Plaintiff asserts that the earliest priority date for any of the patents is March 13, 1998 (*id*. at Exh. D).

Defendant Clarity Skincare, Inc., sells a line of skin-care products under the name Forticelle (Maddox Decl. ¶ 2). Plaintiff alleges that four of Forticelle's products infringe the three patents in suit (Hamm Decl. Exh. D). The products include an ingredient called E91 which Clarity Skincare purchases from Protein Preparations, Inc. (Maddox Decl. ¶ 2). E91 is the only source of peptides and elastin in the Forticelle products (*ibid*.).

This action was filed on January 4, 2007. Mitts sent an email to Lucy Miller at Protein Preparations on February 27, 2007, asking for information about when Protein Preparations first sold E91 (*id*. at Exh. A). Protein Preparations refused to answer (*ibid*.).

Pursuant to the case management order issued on April 12, 2007, parties exchanged terms and phrases to be construed on June 18, 2007 (Schwartz Decl. Exh. A). Parties were to exchange proposed constructions of those terms on June 29, however, plaintiff stipulated to extend the deadline to July 10, because defendants substituted counsel on July 5, 2007. The joint claim construction statement was filed on July 17, 2007.

On July 23, 2007, defendants sent a letter to Protein Preparations asking for information about when E91 was first sold for cosmetics and demanding indemnification and assistance in defending this action (Hamm Decl. Exh. E). Two days later defendants followed up by sending a document subpoena (Hamm Decl. Exh. F). On July 26, 2007, Protein Preparations sent defendants documentation showing that it sold E91 to a company in Utah as early as 1992 for use in skin care products (*id.* at Exh. G). Defendants produced the documents to plaintiff the same day.

Negotiations to file an amended claim-construction statement quickly broke down. Defendants filed this motion on August 2, 2007. A claim-construction tutorial is currently scheduled for September 12, 2007, with the hearing to occur on September 26, 2007.

**ANALYSIS**

A party seeking to amend a pleading after a scheduling order issues must first show good cause for the amendment. *See* Rule 16(b); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). After the court enters a scheduling order, the liberal policy favoring amendments no long applies. Subsequent amendments are not allowed without a request to first modify the scheduling order. At that point, any modification must be based on a showing of good cause. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

**1.    ASSIGNOR ESTOPPEL.**

Defendants seek to add the limitation "The claim does not cover the prior art, such as Protein Preparation's E91 or any substance containing Protein Preparation's E91" to the construction of each of the asserted claims (Proposed Order at 1). The upshot of their motion is that defendant Mitts is an assignor of the patents in suit, so he is estopped from challenging their validity. With that mode of attack closed to them, defendants wish to either use the prior art to narrow the claims themselves or later use the prior art to argue that the practiced method does not infringe. Looking at the substance of the amendment, defendants are seeking it so that the Court can consider whether to consider the issue of prior art at claim construction or during non-infringement. Plaintiff contends that this proposed amendment would be futile because it does not actually present an issue of claim construction.

"Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." *Diamond Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988). Assignor estoppel thus prevents one who assigned a patent, and those in privity with him, from later arguing that what he assigned was invalid. *Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 424 F.3d 1161, 1167 (Fed. Cir. 2005).

3

A unique situation arises where the assignor is practicing the prior art. Where any other defendant could argue that the prior art invalidates the patent, an assignor cannot do so. Even though he or she cannot challenge validity, an assignor still has two avenues open — arguing for a narrow claim construction that excludes the prior art or later arguing non-infringement. *Mentor Graphics Corp. v. Quickturn Design Sys.*, 150 F.3d 1374, 1380 (Fed. Cir. 1998). In *Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.*, 266 U.S. 324, 350–51 (1924), the Supreme Court held that where an assignor was estopped from challenging the validity of a patent, the prior art could be used to narrow the scope of the patent claims. It explained that "the state of the art may be used to construe and narrow the claims of the patent, conceding their validity." *Id*. at 351. Similarly, in *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 252 (1945), an assignor was permitted to argue that the scope of the prior art narrowed the claims past their scope as described on the face of the patent even though the assignor was estopped from challenging validity. Thus, it appears that at least under some circumstances, it may be permissible to consider prior art in construing the claims as against an assignor estopped from challenging validity.

Plaintiffs argue that defendants' proposed amendment does not actually present an issue of claim construction. They point out that importing a limitation from the prior art flouts several canons of claim construction. *See, e.g. SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (criticizing the importation of a limitation from the written description into the claims). Here, however, this order is not deciding the question of whether the proposed limitation should be adopted, it is only deciding that defendants can have an opportunity to brief the issue at this time. It may well be that consideration of the prior art should be a non-infringement argument at summary judgment or trial, but that issue is not before the Court.

Plaintiff also argues that allowing such an amendment would have the perverse effect of putting an assignor in a better position than the rest of the world because the assignor would have the opportunity to argue non-infringement at the claim construction stage. This argument goes to the wisdom of adopting defendants' proposed construction, so it is premature.

4

1 Additionally, plaintiff forgets that even if defendants' construction were adopted, defendants
2 would not yet be in the clear. The methods defendants actually practiced would still have to be
3 determined on summary judgment.

**2. DILIGENCE.**

The inquiry under Rule 16(b)'s good cause standard first focuses on the diligence of the party seeking the amendment. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting FRCP 15 advisory committee notes). If the party seeking modification was not diligent, then the inquiry should end.

As to diligence, defendants present evidence that as soon as they knew of the prior sales of E91 by Protein Preparations, they quickly produced the supporting documents to defendants and then sought to stipulate to amend the claim construction statement. When that failed, defendants filed this motion. Only a few days passed between defendants' learning of Protein Preparations sales of E91 and their filing this motion. Plaintiff argues that defendants were not diligent because they first inquired about sales of E91 in late February of this year. Protein Preparations said that it could not provide such information, and defendants did not follow up until nearly five months later. Defendants declare, however, that Protein Preparations did not give them the information until they threatened to demand indemnification and assistance in defending the action. It is possible that defendants could have made this threat sooner, however, given that Protein Preparations is defendants' critical supplier, failure to do so does not constitute an absence of diligence.

Prejudice to the non-moving party, though not required under Rule 16(b), can supply additional reasons to deny a motion. *Coleman*, 232 F.3d at 1295. "A need to reopen discovery and therefore delay proceedings supports the district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).

Plaintiff first argues that it would be prejudiced by having to defend against a clearly improper and frivolous claim construction. As described in the previous section, defendants'

5

request to amend the claim construction statement is legitimate, at least on its face. The question of whether not the construction should be accepted must be left to a later time.

Plaintiff also contends that it would be prejudiced by the amendment because the claim construction proceedings are rapidly approaching. It argues that the deadline for disclosure of extrinsic evidence has already passed, and that defendants have not disclosed the identity of the declarants or the contents of their declarations. In response, defendants point out that such information would be quite obvious; the names of declarants are the people listed on the documents turned over to plaintiff, and the contents of those declarations would authenticate the documents and corroborate that the events described therein occurred. Moreover, plaintiff's argument is undercut because it has not yet asked for any discovery on the prior art issue. Defendants have expressed their willingness to change or extend the schedule for the claim-construction hearing. This would result in some delay to the claim-construction proceedings, however, trial is still nearly nine months in the future. Plaintiff has not shown that it would be prejudiced by this amendment. Accordingly, defendants' motion to amend the joint claim construction statement is **GRANTED**.

## CONCLUSION

For all of the above-stated reasons, defendants' motion for leave to amend the joint claim construction statement is **GRANTED**. Seeing that no further oral argument is necessary on this motion, the hearing is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: August 14, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE